

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

\*  \*  \*  \*  \*  \*  \*  \*

**RDK TRUCK SALES
AND SERVICE INC.,**
3214 Adamo Dr.
Tampa, FL 33605

        **Plaintiff,**

      **v.**

**MACK TRUCKS, INC.,**
2100 Mack Boulevard
P.O. Box M
Allentown, PA 19105-5000

      **and**

**McNEILUS TRUCK
& MANUFACTURING, INC.**
P.O. Box 70
524 County Road 34 East
Dodge Center, MN 55927

      **and**

**HEIL ENVIRONMENTAL
INDUSTRIES, LTD.**
P.O. Box 8676
6400 Building B
5751 Cornelison Road
Chattanooga, TN 37414-0676

      **Defendants.**

**CIVIL ACTION
NO. 04-CV-4007**

F I L E D

## SECOND AMENDED COMPLAINT

## Introduction

Plaintiff RDK Truck Sales and Service Inc. (hereafter referred to as "RDK") files this Second Amended Complaint against Mack Trucks, Inc. (hereafter "MTI"), McNeilus Truck & Manufacturing, Inc. (hereafter "McNeilus") and Heil Environmental Industries, Ltd. (hereafter "Heil") for violation of Section 1 of the Sherman Act, 15 U.S.C. § 1 and the Florida Antitrust Act, Fla. Stat. § 542.15 *et seq.*, unfair trade practices in violation of the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201 *et seq.*, and tortious interference with existing and prospective business relations.

RDK is an independent truck dealer that is in the business of selling new and used heavy-duty class 8 refuse-related trucks to customers located throughout the United States. Heavy-duty class 8 truck chassis manufactured by defendant MTI are the most popular make of truck chassis for refuse-related applications and the most popular make of chassis sold by RDK.

As set forth more fully herein, in an attempt to control the business of RDK and other established Mack accounts, MTI entered into illegal agreements with defendants McNeilus and Heil, as well as members of the Mack Distributor Council and the Nextran Group, which is the largest Mack truck dealer in the world, to divide markets and allocate customers, including RDK, through coordinated refusals to deal and discriminatory pricing practices. The intent and effect of those agreements and discriminatory pricing was to increase prices to RDK and other consumers of new heavy-duty class 8 refuse trucks by eliminating competition among those who sell those trucks to them. By engaging in such conduct, MTI, McNeilus and Heil have violated Section 1 of the Sherman Act, the Florida Antitrust Act, and the Florida Deceptive and Unfair Trade Practices Act, and have tortiously interfered with RDK's business relationships with customers.

2

## The Parties

1.      RDK Truck Sales and Service Inc. is a Florida corporation with its principal place of business at 3214 Adamo Drive in Tampa, Florida.

2.      MTI is a Pennsylvania Corporation with its principal place of business at 2100 Mack Boulevard, Allentown, Pennsylvania.

3.      McNeilus is a Minnesota corporation with its principal place of business at 524 County Road 34 East, Dodge Center, Minnesota.

4.      Heil is a Tennessee corporation with its principle place of business at 5751 Cornelison Road, Chattanooga, Tennessee.

## Jurisdiction and Venue

5.      This Court has jurisdiction of this matter pursuant to 28 U.S.C. § 1331 and § 1337(a) in that RDK states a claim under Section 1 of the Sherman Act, 15 U.S.C. § 1.

6.      Supplemental jurisdiction over RDK's state law claims is conferred by 28 U.S.C. § 1367(a). Alternatively, this Court has jurisdiction over RDK's claims under state law pursuant to 28 U.S.C. § 1332 because the parties are citizens of different states and the amount in controversy exceeds the sum or value of $150,000, exclusive of interest and costs.

7.      This Court has personal jurisdiction over McNeilus pursuant to 42 Pa.C.S. § 5301(a)(2)(iii) because McNeilus carries on a continuous and systematic part of its general business in Pennsylvania through its maintenance of two branch offices within Pennsylvania.

8.      This Court has personal jurisdiction over Heil pursuant to 42 Pa.C.S. § 5308 because Heil has the necessary minimum contacts with Pennsylvania because Heil sells truck bodies through dealer(s) located in Pennsylvania.

PH2\862823.1

9.      This Court also has personal jurisdiction over each of the defendants under 15 U.S.C. § 22.

10.     Venue is proper in the Eastern District of Pennsylvania by virtue of 28 U.S.C. § 1391(b)(1) and (2) and 15 U.S.C. § 22.

### Factual Background

11.     MTI is one of the largest manufacturers of heavy duty trucks and major truck product components in North America.

12.     MTI manufactures several models of heavy duty class 8 truck chassis specifically engineered and designed for refuse-related applications such as trash and refuse collection and hauling, recycling, and the scrap business (hereafter "Mack refuse trucks").

13.     Since the founding of MTI in 1900, Mack trucks have built an unparalleled reputation for power, strength and durability, particularly within refuse-related industries, where today Mack trucks are the undisputed leader.

14.     Historically, MTI sold Mack trucks through a nationwide network of franchised Mack dealers.

15.     In the early 1990's, MTI began selling Mack refuse trucks directly to certain truck body manufacturers, including defendants McNeilus and Heil.

16.     McNeilus and Heil manufacture truck bodies, including bodies such as front load and rear load garbage packers, side loaders, and roll-off hoists which are used in refuse-related industry applications in conjunction with heavy-duty class 8 truck chassis which have been specifically engineered and designed for refuse-related industry applications.

17.     In addition to selling refuse-related truck bodies they build to end-users, McNeilus and Heil also affix the refuse-related truck bodies they build to heavy duty class 8

4

truck chassis, including Mack chassis, that have been specifically engineered and designed for refuse-related industry applications. McNeilus and Heil sell the resulting "package" to end-users, either directly through company-owned stores or through dealer networks. A package consisting of a truck body mounted on a truck chassis is sometimes referred to in refuse-related industries as a "ready truck."

18.    Since 1997, RDK has been in the business of purchasing and reselling heavy-duty class 8 refuse-related trucks, including Mack refuse trucks, to customers located throughout the United States and the world.

19.    In addition to selling truck chassis, RDK also sells refuse-related truck bodies, including roll-off hoists and garbage packers, as well as "ready truck" packages consisting of a truck chassis mounted with a truck body specially designed and engineered for a refuse-related industry application.

20.    RDK is one of the nation's largest refuse-related truck dealers, selling high quality trucks at low prices.

21.    At all relevant times, RDK has purchased Mack refuse trucks for resale both as chassis alone or as "ready trucks" mounted with refuse-related truck bodies.

22.    The Mack Distributor Council is comprised of franchised Mack truck dealers and, at all relevant times, has purported to serve as an intermediary between the franchised Mack truck dealer network and MTI.

23.    The so-called Nextran Group is the largest franchised Mack truck dealer in the world. It owns all but two of the franchised Mack dealerships in the state of Florida, as well as a franchised Mack dealership in Atlanta.

24.    The dealer principal of the Nextran Group, Jon W. Pritchett, is or has been a member of the Mack Distributor Council.

25.    RDK is a direct competitor of the Nextran Group and other franchised Mack dealers for sales of Mack refuse trucks.

**The Conspiracy Among MTI,
the Members of the Mack Distributor Council
and the Nextran Group, and
MTI's Illegal Customer Allocation Agreements with McNeilus and Heil**

26.    Traditionally, RDK was able to obtain Mack refuse trucks at highly discounted prices and, in turn, offer those trucks to end-users at low prices.

27.    Unhappy about having to compete against RDK and the low prices it offered on Mack refuse trucks, the Nextran Group and members of the Mack Distributor Council requested and pressured MTI to take action to eliminate RDK as a competitor.

28.    MTI entered into a conspiracy and agreement with the Nextran Group and members of the Mack Distributor Council that it would remove RDK as a competitor by preventing RDK from gaining access to highly discounted Mack trucks.

29.    All franchised Mack dealers receive the same "standard " discount on every Mack truck purchased from MTI.  In addition to the "standard" discount, MTI also grants franchised Mack dealers additional discounts, sometimes referred to as "extra sales assistance," on a transaction-by-transaction basis.

30.    Historically, MTI had granted "extra sales assistance" to franchised Mack dealers on Mack trucks designated for sale to RDK.

31.    In furtherance of the conspiracy to remove RDK as a competitor of franchised Mack dealers, MTI eliminated all "extra sales assistance" on Mack trucks designated for sale to RDK by franchised Mack dealers.

6

32.    As a consequence of this action, RDK was no longer able to obtain Mack trucks at highly discounted prices from franchised Mack dealers.

33.    Franchised Mack dealers were not, however, the only potential source of supply available to RDK for highly discounted Mack trucks. Defendant truck body manufacturers McNeilus and Heil were also potential sources of supply for such trucks because MTI sold Mack trucks directly to Heil and McNeilus at highly discounted prices which included substantial additional discounts above the "standard" discount MTI makes available to all franchised Mack dealers.

34.    Although McNeilus and Heil were a potential source of supply for such trucks, MTI eliminated that potential source of supply through an illegal agreement with McNeilus and Heil to eliminate competition in the market for heavy-duty class 8 refuse-related trucks by allocating among themselves certain customers for the purchase of heavy-duty class 8 refuse-related trucks, including RDK.

35.    Pursuant to the illegal customer allocation agreement between MTI and McNeilus and Heil, those truck body manufacturers agreed not to sell to established Mack accounts, including RDK.

36.    In return for commitments from McNeilus and Heil not to compete with MTI for sales to RDK and other established Mack accounts, MTI agreed to charge franchised Mack dealers who sold to RDK and/or competed with Heil and McNeilus higher prices for Mack trucks than MTI charged McNeilus and Heil for those same models of trucks.

37.    At all relevant times MTI sold Mack trucks to franchised Mack dealers who sold to RDK and/or competed with Heil and McNeilus at higher prices than MTI charged to McNeilus and Heil for those exact same models of trucks.

7

38.     The defendants' intent in entering into such illegal agreements was not to promote competition, but rather was to eliminate or severely restrict competition in the market for heavy-duty class 8 refuse trucks and/or relevant submarkets thereof, by allocating customers, including RDK and other established Mack accounts, among and between the defendants.

39.     Pursuant to the illegal customer allocation agreement between MTI and McNeilus and Heil, McNeilus and Heil refused to supply RDK with the highly discounted Mack trucks those truck body manufacturers obtained from MTI.

40.     Because McNeilus and Heil refused to sell trucks to RDK, RDK's only viable source of supply for Mack refuse trucks was franchised Mack dealers. Yet, as a result of the illegal customer allocation agreement between MTI and McNeilus and Heil and MTI's elimination of all "extra sales assistance" on trucks designated for sale to RDK, RDK could not obtain competitively-priced Mack trucks from franchised Mack dealers.

41.     For some time after McNeilus and Heil began refusing to sell to RDK, RDK was still able to purchase discounted Mack vehicles through an independent dealer, Midwest Power Corp., which was, in turn, purchasing such vehicles from McNeilus at significant discounts. However, once McNeilus discovered that RDK was purchasing Mack vehicles through Midwest Power Corp., McNeilus informed Midwest Power Corp. that it would no longer be able to sell vehicles to Midwest Power Corp. unless Midwest Power Corp. was certified as the "end-user," thus effectively eliminating Midwest Power Corp. as a source of discounted Mack vehicles for RDK.

42.     Acting pursuant to its illegal agreement with MTI not to sell to established Mack accounts, Heil, which had previously committed to sell Mack refuse trucks to RDK and had

8

quoted a price on those trucks to RDK, informed RDK's president Richard Kemner in January of 2004 that MTI had ordered Heil not to sell to RDK.

43.    Heil also informed Mr. Kemner that Heil was unable to sell to RDK because MTI had threatened Heil that if Heil sold to RDK, MTI would revoke all of the concessions it provided to Heil.  Such concessions include significant additional discounts above and beyond the "standard" discount available to franchised Mack dealers and special extended payment terms not available to franchised Mack dealers.

44.    Subsequently, MTI modified its position with regard to the sale of trucks to RDK by Heil and McNeilus.  Still acting in furtherance of its conspiracy with the members of the Mack Distributor Council, the Nextran Group, McNeilus and Heil, MTI entered into an illegal resale price maintenance agreement with McNeilus and Heil with respect to sales by McNeilus and Heil to RDK.

45.    Pursuant to the illegal resale price maintenance agreement, McNeilus and Heil agreed with MTI that they would sell trucks to RDK only at their undiscounted "list" prices.  In order to secure the participation of McNeilus and Heil in the resale price maintenance agreement, MTI threatened McNeilus and Heil that if they were to sell trucks to RDK at prices below their undiscounted "list" prices, MTI would revoke all of the concessions it provided to McNeilus and Heil.

46.    The illegal conspiracy among MTI, McNeilus and Heil represents a horizontal agreement among competitors because, *inter alia*, McNeilus and Heil each understood that the other had agreed with MTI not to pass along any discounts they received from MTI to RDK, but rather to sell trucks to RDK only at their undiscounted "list" prices.

9

47.    Acting pursuant to the illegal resale price maintenance agreement, McNeilus, which in May of 2004 had committed to sell Mack refuse trucks to RDK and had quoted a price on those trucks to RDK which was below McNeilus's "list" price, informed RDK's Richard Kemner in June of 2004 that McNeilus would not honor its quote to RDK because Mack had ordered McNeilus not to sell to RDK at less than McNeilus's "list" price.

48.    McNeilus also told Mr. Kemner that MTI had threatened McNeilus that if McNeilus sold to RDK at less than McNeilus's "list" price, MTI would revoke all of the concessions it provided to McNeilus. Such concessions include significant additional discounts above and beyond the "standard" discount available to franchised Mack dealers and special extended payment terms not available to franchised Mack dealers.

49.    Acting in response to its agreement with MTI, McNeilus refused to sell trucks to RDK at less than "list" price.

50.    Heil also informed RDK that Heil was forbidden by MTI from selling trucks to RDK at less than its "list" price.

51.    In 2003, RDK entered into an agreement with a Heil dealer, Heil South, under which Heil South agreed to purchase six (6) ready-truck units equipped with Galbreath roll-off hoists from RDK. Two days after the agreement was reached, Heil South cancelled the order advising RDK that Nextran had objected to Heil purchasing product from RDK. In late January 2004, Mr. Kemner asked the manager of Heil South why the agreement was cancelled and he informed Mr. Kemner that there was a "conspiracy" involving Nextran that prevented Heil South from purchasing and selling product from RDK. The purpose of this illegal agreement between Heil and Nextran was to eliminate RDK as a competitor in the marketplace and thereby harm competition by increasing prices.

10

52.     MTI's intent in entering into the conspiracy between MTI, the members of the Mack Distributor Council, and the Nextran Group, and the illegal customer allocation agreement and resale price maintenance agreement between MTI and McNeilus and Heil was not to promote competition, but rather was to eliminate or severely restrict competition in the market for heavy-duty class 8 refuse-related trucks and/or relevant submarket(s) thereof, by allocating customers, including RDK and other established Mack accounts, among and between MTI and McNeilus and Heil and otherwise causing prices in the relevant market(s) to be higher than they would have been in a competitive market.

53.     In a competitive market free of such conspiracies, customer allocation agreements and agreements regarding resale price maintenance, RDK would have been free to purchase from McNeilus, Heil, MTI and franchised Mack dealers at competitive prices, and to sell to Heil South.  McNeilus, Heil, MTI and franchised Mack dealers would have competed with each other, including on price, to sell to RDK.  However, as a result of the illegal agreements and conspiracies as set forth herein, RDK was not able to purchase trucks from McNeilus or Heil at competitive prices, but instead had to purchase trucks at supercompetitive prices.  In this manner competition was severely restricted in the sale of Mack trucks to RDK.

### Market Allegations

54.     For the purposes of this action, the relevant geographic market is the United States or geographic subsection(s) thereof.

55.     One relevant product market and/or submarket is the market for heavy-duty class 8 refuse-related trucks and/or relevant submarket(s) thereof, one such submarket being the market for heavy-duty class 8 low cab over engine ("LCOE") refuse-related trucks with engines

11

of 10 liters or greater and another such submarket being the market for refuse-related class 8 straight trucks with engines of 10 liters or greater.

56.    LCOE trucks are designed with the cab placed over or in front of the engine, thereby providing superior ingress and egress, visibility and maneuverability as compared to heavy duty chassis of a conventional design.  Heavy duty LCOE refuse-related trucks with engines of greater than or equal to 10 liters are capable of carrying the heaviest payload capacities or gross vehicle weights and are the truck of choice for certain refuse-related applications.

57.    Refuse-related class 8 straight trucks with engines of greater than or equal to 10 liters are capable of carrying heavy payload capacities and are the preferred truck for certain refuse-related applications.

58.    As demonstrated by, *inter alia*, Mack trucks' share of the market for class 8 refuse-related trucks with engines of greater than or equal to 10 liters, which is and has at all relevant times been significantly larger than its nearest competitor, and Mack trucks' share of the market for class 8 LCOE refuse-related trucks with engines of greater than or equal to 10 liters, which is and has at all relevant times been well in excess of 65%, the supercompetitive prices and profit levels obtained by MTI on these trucks, the barriers to entry and expansion in those markets, and the unique and well-established reputation for power, strength and durability that Mack refuse-related trucks have in the marketplace, MTI, at all relevant times, has possessed market power in the relevant market(s).

59.    The unique and well-established reputation of Mack trucks, long-established consumer preferences, the importance to consumers of keeping standardized truck fleets, high infrastructure and development costs, the legal protections afforded intellectual property, and

12

other factors together create a significant barrier to entry and/or expansion by new or smaller truck manufacturers, as reflected by the fact no new competitor has entered the class 8 truck market in several decades.

60..    In addition to the other evidence demonstrating MTI's market power in the relevant market(s), the very fact of the agreements between MTI and McNeilus and Heil demonstrates MTI's market power. If MTI did not have market power it would not have been able to secure such agreements with McNeilus and Heil. Further, it would not have been in MTI's economic interest to enter into such agreements if MTI did not have market power.

61.    Because MTI has market power in the relevant market(s), the effect of the conspiracy between MTI, the members of the Mack Distributor Council, and the Nextran Group, and the illegal customer allocation agreement and resale price maintenance agreement between MTI and McNeilus and Heil has been to lessen competition and increase prices in the relevant market(s), with the result being, *inter alia*, that purchasers of Mack trucks in the relevant market(s), including RDK, have paid and continue to pay supercompetitive prices for Mack refuse trucks.

62.    As a direct and proximate result of the conspiracy between MTI, the members of the Mack Distributor Council, and the Nextran Group, and the illegal customer allocation agreement and resale price maintenance agreement between MTI and McNeilus and Heil, RDK has been forced to pay inflated, supercompetitive prices for Mack refuse trucks, thereby causing RDK to suffer lost profits. Moreover, such conspiracy and agreements and their direct effects impaired RDK's ability to compete for sales of Mack refuse trucks to consumers, thereby causing RDK to lose sales and profits.

13

## FIRST CLAIM FOR RELIEF AGAINST ALL DEFENDANTS
## VIOLATION OF SECTION 1 OF THE SHERMAN ACT

63.    Plaintiff repeats and re-alleges the allegations set forth in paragraphs 1 through 62 above as if fully set forth herein.

64.    As set forth above, MTI entered into a conspiracy between MTI, members of the Mack Distributor Council, and the Nextran Group, and an illegal customer allocation agreement and resale price maintenance agreement between MTI and McNeilus and Heil, all in violation of Section 1 of the Sherman Act.

65.    By such conspiracies and illegal customer allocation agreements between MTI and McNeilus and Heil described herein, whereby the defendant truck body manufacturers agreed, *inter alia*, to refuse to sell trucks to established Mack accounts including RDK, and MTI agreed, *inter alia*, to fix price levels for Mack refuse trucks, MTI, McNeilus and Heil have suppressed and injured competition in the relevant markets.

66.    As a direct result of the conspiracies and illegal agreements between MTI and McNeilus and Heil described herein, purchasers in the relevant market(s) have been forced to pay supercompetitive prices for Mack refuse trucks.

67.    MTI, McNeilus and Heil entered into such illegal agreements with the purpose and effect of restricting competition in the relevant market(s) and causing supercompetitive prices in the relevant market(s).

68.    As a result of the above-described violations of 15 U.S.C. § 15 by MTI, McNeilus and Heil, RDK has suffered damages including, but not limited to, lost business, lost income, and lost profits in an amount in accordance with proof at trial.  Such damages are ongoing.

69.    Under the provisions of 15 U.S.C. § 15, RDK is entitled to bring this action and to recover treble damages, costs of suit and attorneys' fees.

14

WHEREFORE, RDK prays for judgment containing the relief requested in the prayer for relief for all counts as set forth below.

## SECOND CLAIM FOR RELIEF AGAINST ALL DEFENDANTS
## VIOLATION OF THE FLORIDA ANTITRUST ACT

70.    Plaintiff repeats and re-alleges the allegations set forth in paragraphs 1 through 69 above as if fully set forth herein.

71.    As set forth above, MTI, McNeilus and Heil entered into conspiracies and illegal agreements in restraint of trade, all in violation of the Florida Antitrust Act.

72.    By the conspiracy between MTI, the members of the Mack Distributor Council, and the Nextran Group, and the illegal customer allocation agreement and resale price maintenance agreement between MTI and McNeilus and Heil, whereby defendants McNeilus and Heil agreed, *inter alia*, to refuse to sell trucks to established Mack accounts including RDK, and MTI agreed, *inter alia*, to fix price levels for Mack refuse trucks, MTI, McNeilus and Heil have suppressed and injured competition in the relevant markets.

73.    As a direct result of the conspiracies and illegal agreements between MTI and McNeilus and Heil described herein, purchasers in the relevant market(s) have been forced to pay supercompetitive prices for Mack refuse trucks.

74.    MTI, McNeilus and Heil entered into such conspiracies and illegal agreements with the purpose and effect of restricting competition in the relevant market(s) and causing supercompetitive prices in the relevant market(s).

75.    As a result of the above-described violations of the Florida Antitrust Act by MTI, McNeilus and Heil, RDK has suffered damages including, but not limited to, lost business, lost income, and lost profits in an amount in excess of $1,000,000 in accordance with proof at trial. Such damages are ongoing.

PH2\862823.1

76. Under the provisions of the Florida Antitrust Act, RDK is entitled to bring this action and to recover treble damages, costs of suit and attorneys' fees.

WHEREFORE, RDK prays for judgment containing the relief requested in the prayer for relief for all counts as set forth below.

## THIRD CLAIM FOR RELIEF AGAINST ALL DEFENDANTS
### VIOLATION OF
### THE FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT

77. Plaintiff repeats and re-alleges the allegations set forth in paragraphs 1 through 76 above as if fully set forth herein.

78. By the conduct described herein, including the conspiracy between MTI, the members of the Mack Distributor Council, and the Nextran Group, and the illegal customer allocation agreement and resale price maintenance agreement between MTI and McNeilus and Heil, the defendants have engaged in unfair and deceptive trade practices in violation of the Florida Deceptive and Unfair Trade Practices Act.

79. As a result of the violations of the Florida Deceptive and Unfair Trade Practices Act by MTI, McNeilus and Heil, RDK has suffered damages including, but not limited to, lost business, lost income, and lost profits in an amount in excess of $1,000,000 in accordance with proof at trial. Such damages are ongoing.

80. Under the provisions of the Florida Deceptive and Unfair Trade Practices Act, RDK is entitled to bring this action and to recover actual damages, costs of suit and attorneys' fees.

WHEREFORE, RDK prays for judgment containing the relief requested in the prayer for relief for all counts as set forth below.

16

## FOURTH CLAIM FOR RELIEF AGAINST ALL DEFENDANTS
## TORTIOUS INTERFERENCE WITH
## EXISTING AND PROSPECTIVE BUSINESS RELATIONS

81.    Plaintiff repeats and re-alleges the allegations set forth in paragraphs 1 through 80 above as if fully set forth herein.

82.    RDK had business relationships and business expectancies with customers to whom it had previously sold Mack refuse trucks.

83.    MTI, McNeilus and Heil had knowledge of such relationships and business expectancies.

84.    Through the conduct alleged herein, MTI, McNeilus and Heil wrongfully, improperly, maliciously and intentionally interfered with the relationships and business expectancies RDK had with its customers and prospective customers, which wrongful, improper, malicious and intentional conduct caused a disruption and/or termination of such relationships and business expectancies.

85.    As a result of defendants' tortious interference with RDK's existing business relationships and business expectancies, RDK has suffered damages including, but not limited to, lost business, lost income, and lost profits in an amount in excess of $1,000,000 in accordance with proof at trial.  Such damages are ongoing.

86.    Defendants' conduct, as described herein, justifies the imposition of punitive damages against MTI because such conduct was intentional, malicious, reckless, outrageous and egregious.

WHEREFORE, RDK prays for judgment containing the relief requested in the prayer for relief for all counts as set forth below.

PH2\862823.1

## FIFTH CLAIM FOR RELIEF AGAINST MTI
## TORTIOUS INTERFERENCE WITH
## EXISTING AND PROSPECTIVE BUSINESS RELATIONS

87.    Plaintiff repeats and re-alleges the allegations set forth in paragraphs 1 through 86 above as if fully set forth herein.

88.    RDK had business relationships and business expectancies with McNeilus and Heil, who would have sold Mack refuse trucks to RDK at significant discounts below their "list" prices but for MTI's conduct as set forth herein.

89.    MTI had knowledge of such relationships and business expectancies.

90.    Through the conduct alleged herein, MTI wrongfully, improperly, maliciously and intentionally interfered with the relationships and business expectancies RDK had with McNeilus and Heil, which wrongful, improper, malicious and intentional conduct caused a disruption and/or termination of such relationships and business expectancies.

91.    As a result of MTI's tortious interference with RDK's existing business relationships and business expectancies, RDK has suffered damages including, but not limited to, lost business, lost income, and lost profits in an amount in excess of $1,000,000 in accordance with proof at trial. Such damages are ongoing.

92.    MTI's conduct, as described herein, justifies the imposition of punitive damages against MTI because such conduct was intentional, malicious, reckless, outrageous and egregious.

WHEREFORE, RDK prays for judgment containing the relief requested in the prayer for relief for all counts as set forth below.

PH2\862823.1

## **PRAYER FOR RELIEF – ALL COUNTS**

WHEREFORE, RDK prays for the following judgment and relief on all causes of action, and as might be appropriate for each particular cause of action, against MTI, McNeilus and Heil as follows:

1. For compensatory, general, special, statutory, and other damages in an amount to be determined according to the proofs presented during the course of trial;

2. For treble damages;

3. For punitive damages in an amount to be determined according to the proofs presented during the course of trial;

4. For costs and attorneys' fees;

5. For a preliminary and permanent injunction enjoining MTI, McNeilus and Heil from continuing to violate the Sherman Antitrust Act and Florida Antitrust Act by restricting competition in the relevant market(s), fixing or stabilizing prices in the relevant market(s), engaging in resale price maintenance, and engaging in group boycotts and coordinated refusals to deal with RDK.

6. For a preliminary and permanent injunction enjoining MTI, McNeilus and Heil from engaging in deceptive and unfair trade practices in violation of the Florida Unfair and Deceptive Trade Practices Act;

7. For such other relief as the Court deems necessary, just and appropriate under the circumstances.

19

## JURY TRIAL DEMAND

Plaintiff demands a trial by jury on any and all claims for which adjudication by jury may

be appropriate.

                                        DUANE MORRIS LLP

                              By:       JMP 1633_____
                                        Wayne A. Mack
                                        J. Manly Parks
                                        James H. Steigerwald
                                        Marcella E. McIntyre
                                        One Liberty Place
                                        Philadelphia, PA 19103
                                        215.979.1000

                                        ATTORNEYS FOR PLAINTIFF
                                        RDK TRUCK SALES AND
                                        SERVICE INC.

Dated: May 26, 2005

*Of Counsel:*

Kenneth Turkel
V. Stephen Cohen
WILLIAMS SCHIFINO MANGIONE
& STEADY P.A.
One Tampa City Center, Suite 2600
Tampa, FL 33602
813-221-2626



20

## CERTIFICATE OF SERVICE

I, J. Manly Parks, hereby certify that on this 1st day of June, 2005, a true and correct copy of the foregoing Stipulation was served on the following counsel of record as follows:

VIA HAND DELIVERY:

>Ralph Bocchino, Esq.
>Marshall, Dennehey, Warner,
>Coleman & Goggin
>1845 Walnut Street
>Philadelphia, PA 19103-4797

VIA FIRST CLASS MAIL, POSTAGE PREPAID

>Jeremy Heep, Esq.
>Pepper Hamilton LLP
>300 Two Logan Square
>Eighteenth and Arch Streets
>Philadephia, PA 19103-2799

>Lynda M. Hill
>Miller & Martin PLLC
>Suite 1000 Volunteer Building
>832 Georgia Avenue
>Chattanooga, TN 37402

J. Manly Parks